IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

PATRICIA N. BORGERS,

Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

Defendant.

---

## COMPLAINT FOR RELIEF AND JURY DEMAND

---

COMES NOW the Plaintiff, above named, by and through her attorney, The Law Office of Samuel G. Livingston, and sets forth the following Complaint for Relief and Jury Demand as follows:

### I.  JURISDICTIONAL ALLEGATIONS

1.  Plaintiff was and is a resident of the State of Colorado at all times relevant hereto.

2.  Defendant State Farm Fire and Casualty Company (State Farm) is incorporated in the State of Delaware with its principal place of business in the State of Illinois.

3.  The acts and events complained of herein involve an insurance loss which took place in Durango, Colorado.

1

4.  The amount in controversy exceeds the sum of $75,000 such that jurisdiction pursuant to 28 U.S.C. 1332 is appropriate.


## II.  FACTUAL ALLEGATIONS

5.  At all times relevant here to, 77 year-old Patricia Borchers was the owner of a residence located at 324 Cottonwood Creek Road, Durango, CO, and the home was insured under a homeowner's policy issued by the Defendant at all relevant times.

6.  Shortly before the events in issue, Plaintiff's late husband, William Borgers, passed away and members of the Borgers family met in the State of Texas to attend funeral services.

7.  While in Texas, Ms. Borgers noted that the water bill for service to her home was excessive, and asked a neighbor to check on the property to determine whether there was a problem with water consumption at the residence.

8.  Plaintiff was then advised that a hot water line located in the wall of the laundry room had failed, resulting in discharge of excessive steam and water.

9.  Plaintiff immediately reported the loss to State Farm which thereafter utilized the date of July 1, 2017, as the basis for the company's reference to the matter in its various communications with the insured.

10.  Plaintiff initially addressed the water damage issue involving her home with Response Fire and Flood, Inc. d/b/a ServPro (ServePro).

11.  During Plaintiff's initial discussions with representatives of State Farm, Plaintiff was advised that the loss would be covered, and ServPro was authorized to perform services to address immediate remediation of the premises.

2

12.  During Plaintiff's initial conversations with the Defendant's adjuster and ServPro, the State Farm adjuster stated to both Plaintiff and ServPro that the loss was covered and ServPro had authority to proceed with remediating the loss.

13.  ServPro then began to perform services, and advised Plaintiff that it was the company's procedure to obtain verification of coverage prior to beginning work.

14.  ServPro then completed over $80,000 worth of services at the home, which did not involve rebuilding the damage, but addressed exclusively remediation of drywall and other materials destroyed by the water and steam in the home, and removal of asbestos containing materials under containment.

15.  Plaintiff was then advised by State Farm on August 7, 2017 that the company was reserving its rights surrounding a potential denial of coverage involving the loss, and sent a reservation of rights letter to the insured outlining various portions of policy which State Farm claimed it was investigating.

16.  State Farm thereafter contacted representatives of ServPro, and indicated that the company was challenging coverage, and requested that work be stopped at the home.

17.  Plaintiff then contacted representatives of ServPro to address why the remediation process had been discontinued, and was advised that ServPro had been contacted by State Farm indicating that coverage was in issue, and they had been instructed by State Farm to cease work at the home.

18.  Representatives of ServPro informed Plaintiff that it was the company's policy and practice not to begin work on an insurance loss until coverage is confirmed by the insurance company.  Plaintiff was advised by ServPro that it had likewise

communicated with State Farm which confirmed coverage at the outset of the loss adjustment, and that the remediation at Plaintiff's home had been undertaken after confirming with State Farm that coverage existed.

19.  Defendant State Farm then sent an engineer to Plaintiff's home who examined the break in the plumbing line, and concluded that the failure had taken place due to an improper connection of two different metals in the pipe components which had been connected without a dialectic union.

20.  State Farm's engineer ultimately drafted three separate reports.  It was concluded that, based on a review of Plaintiff's water usage records, that the leak was catastrophic releasing water and steam of approximately 700 to 800 gallons per day while Plaintiff was absent from the residence.

21.  By correspondence dated September 13, 2017, attached hereto as **Exhibit A**, State Farm denied all aspects of Plaintiff's claim for damage to the home itself, claims for personal property loss as a result of the incident, and additional living expenses based upon various exclusions contained in the policy.

22.  The insurance policy at "**SECTION I – LOSSES INSURED**" provides on page 8, paragraph 12, that the policy covers "**Sudden and accidental discharge or overflow** of water or steam from a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance."  State Farm made no reference to that covered cause of loss in its denial letter to the insured.

23.  State Farm-based its denial, in part, on "**SECTION I – LOSSES NOT INSURED**", subpart (1), which excludes "f.  continuous or repeated seepage or leakage of water or steam from:  … a plumbing system which occurs over a period of

4

time; h. corrosion, electrolysis or rust; i. mold, fungus or wet or dry rot."  This policy language is followed by:  "However, we do insure for any <u>resulting loss</u> from items a. through m. ...", *(emphasis added)* which applies to all subparts referenced by State Farm in its denial letter.

24.  Essentially all damage to Plaintiff's home "resulted from" the pipe failure which caused escape of water and steam.  The actual cost to repair the failed plumbing connection which is not resulting loss, is only negligible involving repair of a broken pipe, as opposed to the hundreds of thousands of dollars which will be necessary to remediate and rebuild the resulting damage to the home as a result of water and steam escaping.

25.  The Defendant's efforts to impose this coverage exclusion to deny the claim in its entirety, which specifically indicates that the excluded cause of loss does not exclude claims for "resulting damages", was groundless and frivolous, and interposed by State Farm in an effort to fool the insured as the terms of this policy provision would do nothing more than exclude the plumber's bill to actually fix the damaged pipe.

26.  State Farm next utilized "**SECTION I – LOSSES NOT INSURED**", subsection (3)(b) which excluded coverage for defective workmanship, materials, or construction, presumably with reference to the pipe junction which failed.

27.  The language following the specific exclusion referenced by State Farm in subpart (3)(b) surrounding defective workmanship specifically states that: "However, we do insure for any <u>resulting loss</u> for items a., b., and c. ..." *(emphasis added)*

28.  Plaintiff's loss is resulting damage from the pipe failure, which resulted in excessive discharge of water and steam.  This exclusion would apply with reference to

fixing the actual pipe which failed, an item of negligible cost in relation to the total amount of damage done to the premises resulting from the discharge of steam and water.

29.  State Farm's effort to apply this exclusion in relation to the 77 year-old Plaintiff was for the purpose of misleading the insured, and citing this exclusion which would only conceivably apply to fixing a single plumbing fixture was groundless, frivolous, and substantially vexatious in terms of honoring the insurance policy.

30.  Finally, State Farm cited "**SECTION I - LOSSES NOT INSURED**", specifically subpart 2.g. which excludes repair or remediation of mold.

31.  "**SECTION I - LOSSES NOT INSURED**", part (a) which precedes all exclusions referenced herein, indicates that there is no coverage "... for any loss which would not have occurred in the absence of one or more of the following excluded events..." involving mold and other specified exclusions. *(emphasis added)*

32.  Mold observed by State Farm following this loss did not exist prior to Plaintiff's trip to Texas, and in fact came about as a result of the excessive discharge of water and steam in the home during Plaintiff's absence of over one month.

33.  The loss here occurred in the absence of mold, due to water and steam which saturated walls and ceilings which were collapsed and saturated within hours or days of the pipe failure, and had taken place well before mold eventually grew on the destroyed material after the fact.

34.  The scenario involving mold at Plaintiff's home is no different than if a home fire is extinguished with water from outside the home, which arguably could be characterized as water from an "external source", which would be excluded under

most homeowner's policies.  The cause of loss in that example is a fire, and all things which flow from the fire, such as extinguishing it with exterior water, which may eventually lead to growth of mold, are a result of the fire event which is covered under the policy.

35.  Here, the accidental discharge of water and steam in the house was the cause of the loss, which set in motion other events resulting from the pipe failure and the insurer is responsible for covering the underlying cause of loss and all events which follow from the loss.

36.  State Farm is aware of the fundamental distinction regarding when coverage accrues, and that coverage is defined by the event itself and necessitates payment for repairs of resulting consequences of a covered loss. State Farm is aware that the mold damage exclusion is intended to address circumstances where mold exists in a home before the loss, and that this form of pre-existing mold unrelated to the loss itself is what the exclusion is intended to address.

37.  Following the denial, Plaintiff communicated with the Defendant's adjuster, and expressed her dissatisfaction given the fact that her home was essentially destroyed, her personal property items had all been damaged or destroyed in the process as well, and that she was essentially rendered homeless as a result of the events.  In response, State Farm's adjuster informed the insured that "God would not give me anymore than I could handle."

### III. FIRST CLAIM FOR RELIEF
### (Breach of Contract)

38.  Plaintiff incorporates all prior allegations is fully set forth herein.

39.   The Defendant breached the contract of insurance by failing to pay all benefits owed surrounding the remediation of repair and repair of Plaintiff's home, the replacement of her damaged personal property, and additional living expenses owed under the policy.

40.   Plaintiff has been damaged by the Defendant's failure to pay all policy benefits owed for structural repairs, property damage, and additional living expenses in an amount to be proven at trial.

## IV.  SECOND CLAIM FOR RELIEF
### (Promissory Estoppel--Alternative Claim)

41.   Plaintiff incorporates all prior allegations as if fully set forth herein.

42.   Following the loss, the Defendant's representatives acknowledged to Plaintiff that immediate remediation to the home would be covered under the policy, and Plaintiff was led to believe by State Farm that this agreement to pay for initial remediation had been adequately conveyed to representatives of ServPro as part of that company being retained and commencing work at Plaintiff's home.

43.   Plaintiff was specifically advised by ServPro that it had received confirmation of coverage by State Farm as part of agreeing to work on the project, and that the company itself was surprised by State Farm's position that coverage would be rescinded after an initial commitment that coverage was in place prior to starting the remediation process.

44.   Plaintiff relied upon the Defendant's representations to Plaintiff surrounding initial coverage involving the activities of ServPro, and agreed that Servpro could

8

commence work on the premises by way of a work authorization based upon her understanding that ServPro would communicate directly with State Farm and undertake arrangements to perform the remediation services and undertake payment for those services at the conclusion of the process.

45.   After State Farm challenged coverage, Plaintiff then received billing which she had never seen given State Farm's direct communications with ServPro, and Plaintiff had no idea that over $80,000 in work had already been performed before State Farm communicated its position that coverage would be challenged.

46.   Following receipt of ServPro's bill for services, Plaintiff thereafter received collection communications from attorneys retained by ServPro, who threatened a lien and other collection activities in an effort to collect a bill which Plaintiff had never seen and resulted from a direct understanding between State Farm and ServPro.

47.   Plaintiff justifyably relied upon the representations by State Farm that it would cover this loss, and Plaintiff executed a work authorization which did not specify what services would be performed, what charges for those services would be, or otherwise specify what plaintiff had agreed to prior to signing the document, based upon her understanding that State Farm was working directly with this vendor.

48.   The Defendant's breach of its initial agreement to pay for remediation services resulted in Plaintiff being damaged and obligated to pay for initial remediation of what may prove to be a total loss, and in fact ServPro would not have proceeded to run up substantial bills involving plaintiff's home absent its reliance upon State Farm's initial representations that coverage was appropriate for the loss.

## V.  CLAIM FOR RELIEF
## (C.R.S. 10-3-1115/1116)

49.  Plaintiff incorporates all prior allegations as if fully set forth herein.

50.  Plaintiff is a first party insured under the homeowners policy in issue.

51.  The defendant unreasonably denied the claim for benefits in issue by unreasonably and unjustifiably applying exclusions which the company itself was well aware would not have any application to this particular loss.  In this respect, State Farm was fully aware that two of the three exclusions which it cited to the 77 year-old widow would only exclude repair costs associated with a single plumbing line, and nevertheless utilized that very limited exclusion in an effort to justify denying the entire claim and all resulting damage from the pipe failure contrary to the specific wording of the policy.  State Farm was further aware that this loss amounts to a sudden and accidental event involving discharge of 700 to to 800 gallons of water per day following a catastrophic plumbing failure allowing the escape of water and steam, and that this event is the cause of the loss which is not affected by the "mold damage" exclusion referenced in State Farm's denial letter.  State Farm is well aware of basic principles surrounding causation, and aware that water damage or mold damage caused by extinguishing a fire is a result of a covered loss, and that the circumstances of this loss are no different than a typical scenario where the cause of an event is covered under an insurance policy which applies coverage to resulting events.  State Farm is aware that this event could not be conceptualized as initially covered as an accident involving discharge of water and steam, but then subsequently become "uncovered" because that water and steam eventually brought about the formation of

10

mold.  Defendant intentionally misconstrued or wrecklessly disregarded these

provisions of the policy.  The Defendant's unreasonable denial of first party benefits

involving structural repairs, personal property damage, and additional living expenses

results in a penalty against State Farm, beyond paying the benefits themselves, in an

amount of two times those benefits plus attorneys fees and costs.

## VI.  CLAIM OR FOURTH CLAIM FOR RELIEF
### (Common Law Bad Faith)

52.  Plaintiff incorporates all prior allegations as if fully set forth herein.

53.  The Defendant acted intentionally or recklessly in disregard of the

company's own guidelines and/or industry standards in adjusting this loss by way of

applying exclusions which the Defendant was aware would only apply to a minor

plumbing bill necessary to fix a broken pipe, and that those very exclusions indicated

that "resulting damage" from the event itself is covered.  State Farm is aware that this

approach amounts to essentially a "smokescreen" of attempting to distract the insured

into believing that an exclusion which has no application to "resulting losses" would

apply in this case to anything other than a minor expenditure necessary to reconnect a

single plumbing fixture. The Defendant is also well aware that facts or consequences

which result from a loss are not considered the cause of the loss itself, to the same

extent that extinguishing a fire with water does not bring about an excluded event

simply because mold may grow after the fact.  The Defendant is aware that its own

policy language, proceeding the mold exclusion, specifically states that the mold

exclusion applies to "any loss which would not have occurred in the absence..." of

mold.  This loss occurred in the absence of mold, which was not the cause, but a

result of the covered cause of loss specifically referenced in the State Farm policy at

page 8, "losses insured", which covers sudden and accidental discharge of water or

steam from a plumbing system as occurred in this case.  In spite of being fully aware

of these circumstances, State Farm again attempted to apply this language from its

policy in a misleading and deceptive way in an effort to mislead the 77 year-old widow

into dropping and/or otherwise not pursuing her claim for benefits under the policy

which State Farm was fully aware she was entitled to given the nature of this loss.

State Farm is also fully aware that it initially agreed to provide coverage here,

acknowledged that consideration to the remediation vendor, actively communicated

with that vendor surrounding price and other considerations, and then changed its

position leaving a 77 year-old widow to address a remediation bill of over $80,000

which she had never seen or agreed to in terms of services or price.  State Farm

intentionally disregarded these considerations, or recklessly undertook its behavior so

as to be liable for Plaintiff's injuries and losses resulting from bad faith breach of the

insurance contract.

54.  State Farm's breach of the insurance contract in bad faith has caused

Plaintiff economic and noneconomic injuries, damages and losses in an amount to be

established at trial.

WHEREFORE, Plaintiff respectfully request this Court to enter judgment in her
favor and against the Defendants to fully and adequately compensate her for the
losses set forth above, to further allow Plaintiff to amend the pleadings herein to assert

claims for punitive damages at the conclusion of discovery within the Court's discretion, and to award attorney's fees, interest and costs and any and all other items which the court deems just and proper.

**PLAINTIFF REQUESTS TRIAL BY JURY ON ALL ISSUES.**

RESPECTFULLY SUBMITTED this 20th day of February, 2018.

LAW OFFICE OF SAMUEL G. LIVINGSTON, P.C.

***A duly signed original is on file at the Law Office of Samuel G. Livingston, P.C.***

*s/  Samuel G. Livingston*
Samuel G. Livingston #15128
25188 Genesee Trail Road, Suite 140
Golden, CO  80401
(720) 904-9805
ATTORNEY FOR PLAINTIFF

Plaintiff's Address:

324 Cottonwood Creek Road
Durango, CO  81301-6168

13